UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-61314-CIV-SINGHAL

LEXINGTON LUMINANCE LLC,

    Plaintiff,

v.

LIGHTING & SUPPLIES, INC.,

    Defendant.
_____/

## CLAIM CONSTRUCTION ORDER

**THIS CAUSE** has come before the Court upon Defendant Lighting & Supplies, Inc.'s ("L&S" or "Defendant") Motion for Leave to Submit Claim Construction Briefs and Request for Claim Construction Hearing (DE [188]), as well as the Parties' subsequent briefs (DE [195], [196], [201], and [202]) for the construction of certain claim language in U.S. Patent No. 6,936,851 ("the '851 Patent"). The '851 Patent is entitled "Semiconductor Light-Emitting Device and Method for Manufacturing the Same." The patent was first issued on August 30, 2005, and then reissued on December 5, 2014 after an *ex parte* reexamination. The product and process described in the '851 Patent was invented by Dr. Tien Yang Wang, and Plaintiff Lexington Luminance LLC ("Lexington" or "Plaintiff") is the assignee. (DE [196-1] at p. 17). The reissued patent sets out eighteen claims. *See id.* at p. 18.

As the Court noted in its Order on the Parties' Motions for Summary Judgment, Lexington does not make or market products. (DE [185] at p. 4). Instead, its sole business purpose is to enforce the '851 Patent, which it owns. *Id.* Lexington does this through licensing agreements with entities such as LED chip makers. *Id.* The '851

Patent is directed to a novel use of etched patterns on the 'substrate' of a light-emitting diode ("LED") to improve the operation of certain semiconductor devices. (DE [196] at p. 5).

The parties dispute the meaning of multiple claim terms in the '851 Patent. The Court held a hearing on June 9, 2025, pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996), at which both parties presented extensive argument.

I. <u>LEGAL STANDARD</u>

The fundamental purpose of a patent is to give notice to others of the subject matter to which the inventor claims exclusive rights. *See Oakley Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1340 (Fed. Cir. 2003). Thus, the focus of claim construction is ascertaining how one of ordinary skill in the relevant art would have understood the claim language at the time of the invention. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc).

The words used in a patent are evaluated by determining their "ordinary and customary meaning." *Id.* To ascertain that meaning, the Court "looks to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Id.* at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). Those sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314 (quoting Innova, 381 F.3d at 1116).

The Court may also rely on expert testimony, which is extrinsic evidence, to

determine the state of the art at the time of the invention, and how a person of ordinary skill would have understood certain terms of art at that time. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The Court may then use these factual determinations in its legal determination of how the person of ordinary skill in the art would have understood such terms as used in the patent at issue. *Id.*

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312 (quoting *Innova*, 381 F.3d at 1115). Because the Court must examine the patent as a whole, there is a presumption that claim terms normally will be used consistently throughout a patent, such that "the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id*. at 1314. Terms also must be construed in light of the entirety of the patent, not just in the context of the particular claim(s) in which they appear. *Phillips*, 415 F.3d at 1313. The claim language must be read in conjunction with the description in the specification. "'Usually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Even so, the Court must be careful not to import limitations from the specification's embodiment(s) into the claims. *Phillips*, 415 F.3d at 1319-20.

II. ANALYSIS

The parties identified two[1] disputed claim terms in the '851 Patent. The terms

---

[1] The Parties' briefing featured additional disputed claims, namely *"a plurality of etched trenches having a sloped etching profile with a smooth rotation of microfacets without a prescribed angle of inclination"* from Claim 1 and *"a plurality of etched trenches having a sloped smooth etching profile without sharp corners and without a prescribed angle of inclination"* from Claim 15. At the *Markman* hearing on June 9, 2025, however, Parties expressed that they were largely in agreement and there was no dispute as to these terms that would affect their trial preparation. Accordingly, the Court will not evaluate these terms in this Order.

3

appear in claims 1 and 15, which read as follows:

> 1. A semiconductor light-emitting device comprising:
>
>    a substrate;
>    a textured district defined on the surface of said substrate comprising a plurality of etched trenches having a sloped etching profile with a smooth rotation of microfacets without a prescribed angle of inclination;
>
>    a first layer disposed on said textured district, comprising a plurality of inclined lower portions, said first layer and said substrate form a lattice-mismatched misfit system, said substrate having at least one of a group consisting of group III-V, group IV, group II-VI elements and alloys, ZnO, spinel and sapphire; and
>
>    a light-emitting structure containing an active layer disposed on said first layer, whereby said plurality of inclined lower portions are configured to guide extended lattice defects away from propagating into the active layer.

(DE [1-3] at p. 18).

> 15. A semiconductor light-emitting device comprising:
>
>     a substrate;
>     a textured district defined on the surface of said substrate comprising a plurality of etched trenches having a sloped smooth etching profile without sharp corners and without a prescribed angle of inclination;
>
>     a first layer disposed on said textured district, comprising a plurality of inclined lower portions, said first layer and said substrate form a lattice-mismatched misfit system, said substrate having at least one of a group consisting of group III-V, group IV, group II-VI elements and alloys, ZnO, spinel and sapphire; and
>
>     a light-emitting structure containing an active layer disposed on said first layer, whereby said plurality of inclined lower portions are configured to guide extended lattice defects away from propagating into the active layer.

(DE [1-3] at p. 18).

The first disputed term is *"a light-emitting structure containing an active layer disposed on said first layer. . ."* found in both claims.  In Lexington's construction, *"disposed on"* means *"applied directly or indirectly above."*  (DE [196] at p. 13).  L&S argues that there is "no support for [Lexington's] broadened interpretation[,]" and instead, the terms "should have their ordinary meaning as interpreted by one of ordinary skill in the art."  (DE [195] at p. 1, 8).  That is, in L&S's construction, the claims do not account for 'intervening layers'—the active layer must be directly on the first layer.

The Court disagrees that there is no support for Lexington's construction.  In fact, it is L&S's construction that is light on support.  First, with respect to *"disposed on,"* L&S puts forward a single, mostly conclusory paragraph without any reference to authority in its Opening Claim Construction Brief.  *See* (DE [195] at p. 8).  Then, in attempts to rebut two supposedly 'unavailing arguments,' L&S again fails to offer any authority that would refute Lexington's argument regarding the term 'comprising.'  (DE [202] at p. 6).  Hence, L&S does not present any basis for overcoming precedent regarding the term 'comprising' or its implications on the instant dispute.  Comprising, as a term, is well understood to mean "'including but not limited to.'"  *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007); *Sevenson Environmental Services, Inc. v. United States*, 76 Fed. Cl. 51, 74 (Fed. Cl. 2007) (". . . 'comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim.") (citations omitted) (cleaned up).  In other words, Claims 1 and 15 are not limited to the elements specifically listed, and the claims'

5

plain language allows for additional layers.  This, on its own, is sufficient to find that *"disposed on"* means **"applied directly or indirectly above."**

L&S's argument is further belied by the '851 Patent's specification and available persuasive case authority.  The '851 Patent's Claim 5 contains the same language as Claims 1 and 15's disputed language.  *See* (DE [1-3] at p. 15) ("a light-emitting structure containing an active layer disposed on said first layer.").  And the specification corresponding to Claim 5 makes clear that the Patent anticipates and allows for intervening layers.  *See id.* at p. 15, col. 7, ll. 21–24 (". . . a light-emitting device is disposed on the surface of the chirped mask array comprising a buffer layer, a lower cladding layer, an active layer, an upper cladding layer, and a contact layer.") (labeling numbers omitted). This stands in contrast to other contexts, where the specification identified the "directly disposed layer[.]" *See id.* at p. 11, col. 1, ll. 19.  Further, other courts' related findings are helpful for this Court's own evaluation.  *See Lexington Luminance LLC v. Google, Inc.*, 2016 WL 1254229, at *5 (D. Mass. March 29, 2016) ("Because the intrinsic evidence does not justify a narrower construction, the court will construe 'disposed on' as 'applied directly or indirectly above.'"); *Lexington Luminance LLC v. Amazon.com, Inc.*, 6 F.Supp. 3d 179, 185 (D. Mass. March 18, 2014) (noting parties' joint proposal that "disposed of" should be construed as "applied directly or indirectly above").  Therefore, the Court construes *"disposed of"* as **"applied directly or indirectly above."**

The second term at issue is *"whereby said plurality of inclined lower portions are configured to guide extended lattice defects away from propagating into the active layer[]"* found in both claims.  The Parties do not dispute that this clause is limiting.  However, Lexington frames the term as a "structural limitation[,]" while L&S gives weight to the

6

"functional limitation that purportedly 'guides' the defects away from the active layer. . ." (DE [196] at p. 6; DE [201] at p. 5). According to Lexington, the phrase should be construed as *"such that the inclined lower portions are configured to reduce the propagation of extended lattice defects into the active layer*[.]" (DE [196] at p. 13). L&S suggests that Lexington's construction omits the "guiding function[,]" and that the Court should interpret the claim as requiring "the recited 'plurality of inclined lower portions' structure perform the recited *guiding* function." (DE [202] at p. 4).

But the Court is not persuaded by L&S's view that Lexington's construction would impermissibly broaden the claim. L&S correctly identifies that the disputed clause replaced previous language. *See* (DE [1-3] at p. 14) ("so as to guide the extended lattice defects away from propagating into the active layer."). But, as other courts have also found, this shift in language did not change the scope of the original claim. *See Lexington Luminance LLC*, 2016 WL 1254229, at *6 ("This clarifying amendment did not substantively alter the original claim scope and Lexington Luminance's prior successful argument applies with equal force to the 'whereby' phrase."). Moreover, the Court concurs that, as written, the claim does not require that "the inclined lower portions are configured to have an effect on *all* extended lattice defects." (DE [196] at p. 10). Thus, the Court construes the 'whereby' phrase as: **"such that the inclined lower portions are configured to reduce the propagation of extended lattice defects into the active layer."** In interpreting the term this way, the Court aligns itself with the intended function of the claimed structure as designated by the Federal Circuit. *See Lexington Luminance LLC v. Amazon.com, Inc.*, 601 Fed. App'x. 963, 969 (Fed. Cir. 2015) ("As the district court

7

correctly noted, the specification explains that 'the goal of the invention is to "reduce" the number of lattice defects.'").

It is so **ORDERED.**

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 22nd day of September 2025.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished to counsel via CM/ECF